IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH LEVINE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TANGOE, INC., JAMES D. FOY, GERALD D. KOKOS, DAVID COIT, GARY GOLDING, RONALD KAISER, JACKIE R. KIMZEY, RICHARD PONTIN, and NOAH WALLEY,<br><br>Defendants. | Case No. _____<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(d), 14(e) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiff Joseph Levine ("Plaintiff"), by and through his undersigned counsel, brings this shareholder class action on behalf of himself and all other similarly situated public shareholders of Tangoe, Inc., ("Tangoe" or the "Company") against Tangoe and the members of the Company's board of directors (collectively, the "Board" or the "Individual Defendants"), for violations of Sections 14(d), 14(e) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), §§ 78n(d)(4), 78n(e) and 78t(a) respectively, SEC Rule 14d-9 (17 C.F.R. § 240.14d-9) and SEC Regulation G, 17 C.F.R. 244.100, in connection with the Proposed Transaction (defined below) between Tangoe and Marlin Management Company, LLC ("Marlin"). Plaintiff alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**SUMMARY OF THE ACTION**

1. On April 28, 2017, Tangoe, and Marlin entered into a definitive Agreement and Plan of Merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Marlin commenced the Tender Offer on May 12, 2017 (the "Tender Offer") to acquire all of the outstanding shares of Tangoe's common stock at a purchase price of $6.50 per share in cash. The Tender Offer is scheduled to expire at 10 AM EST on **June 13, 2017**. Following the completion of the Tender Offer, and subject to the terms and conditions of the Merger Agreement, Marlin intends to combine Tangoe with its existing portfolio company, Asentinel, LLC (the "Proposed Transaction").

2. The Proposed Transaction is a going private transaction whereby Marlin, a private equity firm, will acquire Tangoe for inadequate consideration.

3. As discussed below, the Proposed Transaction is the product of a flawed process and deprives Tangoe's public stockholders of the ability to participate in the Company's long-term prospects.

4. In order to accomplish the Tender Offer, Defendants filed a Schedule 14D-9 Solicitation/Recommendation Statement ("Recommendation Statement") that fails to provide all material information. In particular, the Recommendation Statement fails to disclose material information about the financial projections prepared by the Company and relied upon by Stifel, Nicolaus & Company, Inc. ("Stifel"), the Company's financial advisor, and the potential conflicts of interest faced by Company executives. As a result, Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Recommendation Statement to be filed with the SEC.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Tangoe and the Board for violations of Sections 14(d), 14(e) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tangoe stockholders before the expiration of the Tender Offer or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Tangoe maintains its principal place of business in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

9. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Tangoe.

10. Defendant Tangoe is a corporation organized and existing under the laws of the State of Delaware with its principal executive offices located at 35 Executive Boulevard, Orange, Connecticut 06477. Tangoe is a provider of information technology and Telecom Expense Management (TEM) software and related services. The Company offers its services to a range of global enterprises and service providers. The Company's stock previously traded on the NASDAQ under the symbol "TNGO." Tangoe was delisted effective at the open of business on Tuesday, March 14, 2017. The Company's stock currently trades over the counter ("OTC").

11. Defendant James D. Foy ("Foy") has served as the Company's Chief Executive Officer since May 2, 2016 and has served as director of the Company since March 2014.

12. Defendant Gerald G. Kokos ("Kokos") serves as the Company's Lead Director and Executive Chairman of the Company. Kokos has served as a director of the Company since September 2002.

13. Defendant David M. Coit ("Coit") has served as a director of the Company since August 2006.

14. Defendant Gary Golding ("Golding") has served as a director of the Company since September 2002.

15. Defendant Ronald W. Kaiser ("Kaiser") has served as a director of the Company since January 2009.

16. Defendant Jackie R. Kimzey ("Kimzey") has served as a director of the Company since March 2008.

17. Defendant Richard S. Pontin ("Pontin") has served as a director of the Company since March 2007.

18.  Defendant Noah J. Walley ("Walley") has served as a director of the Company since July 2008.

19.  Defendants Foy, Kokos, Coit, Golding, Kaiser, Kimzey, Pontin, and Walley are collectively referred to herein as the "Board" or the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

20.  Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons and entities that own Tangoe common stock (the "Class"). Excluded from the Class are defendants and their affiliates, immediate families, legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.  Plaintiff's claims are properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

22.  The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. As of May 10, 2017, there were approximately 39,943,806 shares of Company common stock issued and outstanding. All members of the Class may be identified from records maintained by Tangoe or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

23.  Questions of law and fact are common to the Class and predominate over questions affecting any individual Class member, including, *inter alia*:

  (a) Whether Defendants have violated Section 14(d)(4) of the Exchange Act;

  (b) Whether the Individual Defendants have violated Section 14(e) of the Exchange Act;

(c) Whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d) Whether Plaintiff and the other members of the Class would suffer irreparable injury were the Proposed Transaction consummated.

24. Plaintiff will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent. Plaintiff has retained competent counsel experienced in litigation of this nature.

25. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

26. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**SUBSTANTIVE ALLEGATIONS**

27. Tangoe is a provider of information technology and Telecom Expense Management (TEM) software and related services. The Company offers its services to a range of global enterprises and service providers. The Company's products and solutions include mobility, telecom, cloud, information technology expense, strategic consulting and mobility as a service. The Company's mobility solution includes expense management; procurement, logistics and activation; usage management; enterprise mobility; mobile support, and financial management. The Company offers TEM software, consulting and support.

28. On April 28, 2017, following execution of the Merger Agreement, Tangoe and Marlin issued a joint press release stating:

> LOS ANGELES, Calif., ORANGE, Conn. and MEMPHIS, Tenn. April 28, 2017

— Marlin Equity Partners ("Marlin"), a global investment firm, announced today that it has entered into a definitive agreement to acquire all outstanding shares of Tangoe, Inc. (OTCPK: TNGO) ("Tangoe") for $6.50 per share in cash. Tangoe is a global leader in telecom expense management ("TEM") solutions that enable enterprises to manage and optimize spend across multiple IT categories by providing visibility into the complex processes associated with their assets and expenses.

"After careful consideration and deliberation, our Board of Directors concluded that the sale of Tangoe to Marlin was in the best interest of Tangoe and its shareholders," said Jerry Kokos, Executive Chairman of Tangoe. "Given its deep bench of operational resources and excellent track record of acquiring and growing businesses in the TEM market, Marlin is an ideal partner for Tangoe. This transaction provides the opportunity for immediate and substantial value to Tangoe shareholders, while also allowing Tangoe greater flexibility to execute on its long-term strategic vision."

At closing, Marlin intends to combine Tangoe with its existing portfolio company Asentinel, a provider of TEM software and services. The combination would create a market leader managing more than $38 billion of IT and telecom spend on behalf of over 1,300 customers worldwide. The new company would operate under the Tangoe brand with Jim Foy continuing to serve as CEO, with Tim Whitehorn, CEO of Asentinel, serving as the Chief Product Officer.

"We are excited about the opportunity to partner with Marlin and combine with Asentinel, and see tremendous benefit in combining Tangoe's global scale and comprehensive offering with Asentinel's heritage of technological innovation," said Mr. Foy. "The breadth and depth of our combined product and service capabilities, delivered on a global scale, should enable us to provide a compelling value proposition to our customers," added Mr. Whitehorn.

"We look forward to working closely with the Tangoe and Asentinel teams to develop world-class solutions and drive customer success," said Peter Chung, a principal at Marlin. "This agreement further supports Marlin's long-term commitment to the TEM market and the value we believe these solutions deliver to customers."

Tangoe's Board of Directors has approved and will recommend Marlin's proposal to acquire all outstanding common shares of Tangoe not already owned by Marlin for $6.50 in cash per share, subject to various conditions. Under the terms of the merger agreement, an affiliate of Marlin is required to commence a tender offer to acquire all outstanding shares of Tangoe's outstanding common stock at $6.50 per share in cash no later than May 12, 2017. The merger agreement also provides that, promptly after the closing of the tender offer, any shares not tendered in the tender offer will be acquired by Marlin in a second-step merger at the same cash price as paid in the tender offer. Closing of the

tender offer and closing of the merger are subject to certain conditions, including the satisfaction of a minimum tender condition, completion of a 30-day go-shop period, expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act, and other customary closing conditions. If certain of these conditions are not satisfied, the parties have the right under specified circumstances to elect to terminate the tender offer and solicit proxies from Tangoe's stockholders for a stockholder vote to approve the merger agreement. Tangoe may terminate the merger agreement to accept a superior proposal, but in such cases Marlin would be entitled to receive a termination fee. If the transaction fails to close as a result of a financing failure, Tangoe is entitled to receive a reverse termination fee.

The transaction is expected to close late in the second quarter of 2017. For further information regarding the terms and conditions contained in the definitive merger agreement, please see Tangoe's Current Report on Form 8-K, which will be filed in connection with this transaction.

29. The Proposed Transaction was marred by a flawed process driven by certain conflicted members of the Board, who will receive windfall profits from equity compensation packages and cash outs. In addition, certain members of the management secured for themselves lucrative continuing employment with the surviving company

30. In December 2015, Vector Capital IV., L.P. and its affiliates ("Vector") had made inquiries to the Company regarding its possible consideration of strategic alternatives, the business plan of the Company, and the Company's prospects as an independent entity. On March 6, 2016, the Company and Vector signed a confidentiality agreement.

31. After the close of business on March 7, 2016, the Company reported that it would restate its financial statements for the years 2013 and 2014 and the first three quarters of 2015, disclosing errors in recognizing revenue, primarily due to non-recurring revenue. As a result, the Company devoted significant internal resources to pursue the restatement, and expended approximately $16 million in costs in 2015 and 2016 for outside assistance.

32. Over the next several months, the Company had initial discussions with several parties regarding a potential investment in the Company and/or strategic transaction. Those parties

included Vector, Clearlake Capital Partners IV GP, L.P. and its affiliates ("Clearlake"), "Sponsor 1," "Sponsor 2," "Sponsor 3," "Sponsor 4," "Sponsor 5," and "Sponsor 6."

33. On December 14, 2016, Marlin had verbally proposed a transaction at $7.00 per share and Clearlake and Vector had verbally proposed a joint transaction at a range of $7.00 to $7.50 per share, and that any written indication of interest to that effect would be contingent on further due diligence and review of the ongoing results of operations.

34. On December 16, 2016, in response to inquiries from Stifel, Marlin indicated it could complete diligence and be prepared to execute a definitive acquisition agreement in up to six weeks, while Clearlake and Vector indicated a period of up to five weeks. Each requested that the Company enter into an exclusivity agreement.

35. On January 2, 2017, the Company received a letter from Clearlake and Vector indicating an interest in a joint acquisition of the Company at a price of $7.00 per share.

36. On January 3, 2017, the Company issued a press release confirming receipt of the proposal from Marlin and the joint proposal from Clearlake and Vector.

37. On January 9, 2017 representatives of another financial sponsor, Sponsor 8, contacted representatives of Stifel about its potential interest in a transaction.

38. As part of these discussions, the Company entered into confidentiality agreements with Clearlake, Vector, Sponsor 3, and Sponsor 8 (discussed below).

39. On February 27, 2017, the Company received a letter from Marlin offering an acquisition of the Company through a cash tender offer at a price of $6.50 per share.

40. Later, on March 1, 2017, the Company received a letter from Clearlake and Vector indicating they were not prepared to make an acquisition proposal at that time, requesting an additional three weeks with respect to a potential proposal.

9

41.     On March 9, 2017, the Company received a letter from Marlin proposing an acquisition of the Company through a cash tender offer at a price of $6.50 per share.

42.     On March 28, 2017, Messrs. Foy and Kokos spoke by telephone with representatives of Marlin regarding possible ways to integrate the Company's management team with Marlin's.

43.     On April 28, 2017, the Company and Marlin announced entry into the Merger Agreement.

***The Recommendation Statement Provides Stockholders With Materially Incomplete and Misleading Information Concerning The Tender Offer***

44.     On May 12, 2017, Defendants caused the materially incomplete and misleading Recommendation Statement to be filed with the SEC.

45.     The Recommendation Statement contains material misrepresentations and omissions of fact that must be cured to allow Tangoe's stockholders to render an informed decision as to whether to tender their shares.

46.     The Recommendation Statements omits material information regarding: (i) the Company's financial projections; (ii) the sale process leading up to the Proposed Transaction; (iii) potential conflicts of interest by Tangoe's management and directors; and (iv) the valuation analyses prepared by Stifel.

47.     The Recommendation Statement discloses projections of non-GAAP metrics such as adjusted EBITDA, and reconciles it to the Company's operating income. However, the Company is required to disclose and reconcile Net Income to adjusted EBITDA under Regulation G, 17 C.F.R. 244.100, as that is the most directly comparable GAAP metric. According to the SEC, "EBITDA should be reconciled to net income. . .under GAAP. Operating income would not be considered the most directly comparable GAAP financial measure because EBIT and EBITDA

make adjustments for items that are not included in operating income."[1] The failure to disclose and reconcile Net Income to adjusted EBITDA renders the Company's financial projections false and misleading.

48. With regard to the omission of material information relating to the sale process preceding the Proposed Transaction, the Recommendation Statement states that the Company entered into several confidentiality agreements, including those with Clearlake, Vector, Sponsor 3, and Sponsor 8. The Recommendation Statement, however, omits whether these confidentiality agreements contained standstill provisions, and if so, whether the standstill contained a sunset provision and/or "don't ask, don't waive" provisions, or whether the counterparties could seek a waiver in order lodge an unsolicited acquisition offer. As the confidentiality agreement signed by Marlin contained a standstill provision, the other confidentiality agreements likely did as well.

49. If these confidentiality agreements entered into with Clearlake, Vector, Sponsor 3, and Sponsor 8 contained standstills, a topping bid during the go-shop period would have been prohibited. Pursuant to the Merger Agreement, the Company is explicitly forbidden to waive any standstill provisions. Thus, the omission of this information renders all references to the confidentiality agreements in the Recommendation Statement materially false and misleading.

50. The Recommendation Statement fails to disclose potential conflicts of interest faced by Tangoe's management. Specifically, the Recommendation Statement fails to disclose the nature and timing of all communications regarding future employment of Tangoe's management, including the identity of persons involved in such communications. As detailed in the press release announcing the Proposed Transaction, after the closing, "[t]he new company would operate under the Tangoe brand with Jim Foy continuing to serve as CEO." The fact that members of Tango

---

[1] https://www.sec.gov/divisions/corpfin/faqs/nongaapfaq.htm.

management will stay on is indicated later in that same press release, when Peter Chung, a principal at Marlin, states: "We look forward to working closely with the Tango and Asentinel teams to develop world-class solutions and drive customer success."

51. If future employment and compensation were negotiated and agreed even informally prior to entering into the Merger Agreement, then management's involvement in the negotiation of the Proposed Transaction was tainted, their interests were in direct conflict with the interest of the Tangoe stockholders to whom they owed fiduciary duties, and this information must be disclosed prior to the expiration of the Tender Offer. Stockholders must be apprised of any potential conflicts of interest amongst management and the Board; the appearance of impropriety suggests that the Individual Defendants are not acting exclusively in the best interests of the Company's stockholders. The failure to disclose information relating to the timing and nature of all communications regarding future employment of Tangoe's management, thereby rendering this section misleading on account of the material omission.

52. Rather, the Recommendation Statement merely states that, on March 28, 2017, Messrs. Foy and Kokos spoke by telephone with representatives of Marlin regarding possible ways to integrate the Company's management team with Marlin's. Without more detail as to the nature of these communications, stockholders are being materially misled into believing that the first such communication took place on March 28, 2017, when it in all probability occurred earlier.

53. The Recommendation Statement also fails to provide sufficient information for stockholders to assess the valuation analyses performed by the Company's financial advisor in support of its fairness opinion. In particular, the Recommendation Statement fails to disclose the individual multiples for the companies observed in Stifel's *Selected Company Analysis*.

54. With respect to Stifel's *Selected Transactions Analysis*, the Recommendation Statement fails to disclose the individual multiples for the transactions observed in the analysis.

55. By reason of the foregoing, Defendants have violated the Exchange Act and rules promulgated thereunder.

56. Unless Defendants are enjoined by the Court, they will continue to breach their duties owed to Plaintiff and the members of the Class, to the irreparable harm of the members of the Class.

57. Because of the false and misleading statements in the Recommendation Statement, Plaintiff and the Class are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure the Individual Defendants' misconduct is corrected.

## FIRST CAUSE OF ACTION

### Claim for Violations of Section 14(e) of the Exchange Act Against All Defendants

58. Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

59. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading…" 15 U.S.C. § 78n(e).

60. As discussed above, Tangoe filed and delivered the Recommendation Statement to its stockholders, which defendants knew or recklessly disregarded contained material omissions and misstatements as set forth above.

61. During the relevant time period, defendants disseminated the false and misleading Recommendation Statement above. Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

62. The Recommendation Statement was prepared, reviewed and/or disseminated by defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, and potential conflicts of interest faced by certain Individual Defendants and the Company's financial advisor.

63. In so doing, Defendants made untrue statements of material facts and omitted material facts necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were aware of this information and their obligation to disclose this information in the Recommendation Statement.

64. The omissions and materially incomplete and misleading statements in the Recommendation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Recommendation Statement as altering the "total mix" of information made available to stockholders.

65. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements

therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

66. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## SECOND CAUSE OF ACTION

### Claim for Violations of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9) Against All Defendants

67. Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

68. Tangoe and the Individual Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

69. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) provides that:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

70. SEC Rule 14d-9, which was adopted to implement Section 14(d)(4) of the Exchange Act, provides that:

> Information required in solicitation or recommendation. Any solicitation or

15

recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof.

71. In accordance with Rule 14d-9, Item 8 of a Schedule 14D-9 requires a Company's directors to:

Furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

72. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Tangoe and the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

73. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement materially incomplete and therefore misleading.

74. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## THIRD CAUSE OF ACTION

### Claim for Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

75. Plaintiff repeats and realleges each allegation contained above as if fully set forth herein.

76. The Individual Defendants acted as controlling persons of Tangoe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tangoe, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

77. Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

79. In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the

Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

80. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e) and 14(d)(4) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A. Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B. Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company discloses the material information identified above which is currently omitted from the Recommendation Statement;

C. Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D. Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants' wrongdoing;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Date: May 25, 2017

Respectfully submitted,

By: */s/ Shannon L. Hopkins*
**LEVI & KORSINSKY LLP**
Shannon L. Hopkins
773 Summer Street, Suite 304
Stamford, CT 06901
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com

**OF COUNSEL**

**FARUQI & FARUQI, LLP**
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Donald J. Enright (to be admitted pro hac vice)
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Telephone: (212) 971-1341
Facsimile: (212) 601-2610

*Local Counsel for Plaintiff*

*Attorneys for Plaintiff*